837 So.2d 521 (2003)
Paul J. BRUNO, Appellant,
v.
STATE of Florida, Appellee.
No. 1D02-2498.
District Court of Appeal of Florida, First District.
February 6, 2003.
Appellant, pro se.
Charlie Crist, Attorney General, Tallahassee, for Appellee.
*522 BENTON, J.
Paul J. Bruno appeals an order summarily denying his timely motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. The motion raises several claims, but only two merit discussion on appeal. We hold that his sentence for lewd and lascivious assaults in violation of section 800.04, Florida Statutes (1997), is illegal, and must be set aside on remand, insofar as it requires him to submit to castration. We also hold that the motion adequately alleges a claim of ineffective assistance of counsel by asserting that his plea was the product of his lawyer's misadvice about how much time he would have to serve in prison. The trial court has not attached portions of the record to its order that conclusively refute this claim. We therefore reverse and remand on this claim, as well. We affirm otherwise.

I.
After he was charged with five counts of lewd and lascivious assault in violation of section 800.04, Florida Statutes (1997), the state proposed a plea bargain under which Mr. Bruno could elect between adjudication on all five counts and a sentence of 256 months' incarceration, or adjudication on four counts and a sentence of 188 months' incarceration plus surgical castration. Mr. Bruno accepted the state's offer and elected the latter option. The trial court then pronounced a sentence of 188 months' incarceration and ordered that he undergo surgical castration.

II.
As the state concedes on appeal, no statute authorized castration, chemical or surgical, for convictions under section 800.04, Florida Statutes (1997). While section 794.0235(1), Florida Statutes (1997), purported to authorize sentencing a defendant to treatment with medroxyprogesterone acetate, it did so only in the event of a conviction for sexual battery under section 794.011, Florida Statutes (1997), which was not charged in the present case.[1] An offense under section 800.04, Florida Statutes (1997), can involve much less serious conduct than sexual battery under section *523 794.011, including, we have held, "verbal conduct." See Morris v. State, 789 So.2d 1032, 1033 (Fla. 1st DCA 2001) (en banc) (upholding a conviction under section 800.04 based on a "verbal interchange with the victim").
An illegal sentence cannot be imposed, even as part of a negotiated plea agreement. See, e.g., Wright v. State, 743 So.2d 103, 103 (Fla. 1st DCA 1999) ("A trial court is not authorized to impose an illegal sentence, even pursuant to a plea agreement. See Williams v. State, 500 So.2d 501 (Fla.1986)."). Because neither section 794.0235(1), Florida Statutes (1997), nor any other provision of Florida law authorizes castration as punishment for lewd and lascivious conduct in violation of section 800.04, Florida Statutes (1997), appellant's sentence is illegal to the extent it purports to require his castration. See Carter v. State, 786 So.2d 1173, 1178 (Fla. 2001) ("To be illegal within the meaning of rule 3.800(a) the sentence must impose a kind of punishment that no judge under the entire body of sentencing statutes could possibly inflict under any set of factual circumstances." (quoting Blakley v. State, 746 So.2d 1182, 1186-87 (Fla. 4th DCA 1999))); State v. Mancino, 714 So.2d 429, 433 (Fla.1998) ("A sentence that patently fails to comport with statutory or constitutional limitations is by definition `illegal.'"). This illegality is subject to correction at any time, including collaterally. The requirement that Mr. Bruno undergo surgical castration must be set aside on remand.
The state may, but need not, acquiesce in the sentence it bargained for, thus modified. But we have held: "When a sentence is illegal, and such a sentence was the product [as here] of a negotiated plea agreement, the state has the option of either agreeing to the appellant's resentencing, or withdrawing from the plea agreement and proceeding to trial on the original charges. Williams v. State, 650 So.2d 1054, 1055 (Fla. 1st DCA 1995)." White v. State, 828 So.2d 491, 492 (Fla. 1st DCA 2002); see also West v. State, 818 So.2d 637, 638 (Fla. 1st DCA 2002); Bell v. State, 795 So.2d 1140, 1141 (Fla. 1st DCA 2001); Rainey v. State, 741 So.2d 1207, 1208 (Fla. 1st DCA 1999); Forshee v. State, 579 So.2d 388, 389 (Fla. 2d DCA 1991); Jolly v. State, 392 So.2d 54, 56 (Fla. 5th DCA 1981).

III.
The motion also alleges that defense counsel affirmatively misadvised appellant *524 as to the length of time he would actually have to serve in prison. It asserts that defense counsel told him he would serve nine to ten years at most, and that he relied on this advice in entering his plea, only to learn later that he would have to serve at least 13.3 years. See § 944.275(4)(b)3., Fla. Stat. (1997) (barring any award of gain-time that would reduce a prison sentence below 85% of the term pronounced at sentencing). These allegations are sufficient to state a claim of ineffective assistance of counsel.[2]See State v. Leroux, 689 So.2d 235, 236-37 (Fla.1996); Brazeail v. State, 821 So.2d 364, 367-68 (Fla. 1st DCA 2002); Little v. State, 673 So.2d 151, 151 (Fla. 1st DCA 1996). Nothing in the plea colloquy or the plea agreement refutes this claim.

IV.
Accordingly, we reverse the order under review insofar as it fails to set aside the castration provision in appellant's sentence and remand with directions that the trial court excise that provision.
In the event the state does not elect to withdraw from the plea agreement, the trial court should also conduct an evidentiary hearing on the ineffective assistance claim of affirmative misadvice, unless the record conclusively refutes the claim, in which case it should attach pertinent portions of the record to the order on remand.
The order under review is otherwise affirmed.
ALLEN, C.J., and HAWKES, J., concur.
NOTES
[1] Then as now, section 794.0235 provides:

(1) Notwithstanding any other law, the court:
(a) May sentence a defendant to be treated with medroxyprogesterone acetate (MPA), according to a schedule of administration monitored by the Department of Corrections, if the defendant is convicted of sexual battery as described in s. 794.011.
(b) Shall sentence a defendant to be treated with medroxyprogesterone acetate (MPA), according to a schedule of administration monitored by the Department of Corrections, if the defendant is convicted of sexual battery as described in s. 794.011 and the defendant has a prior conviction of sexual battery under s. 794.011.
If the court sentences a defendant to be treated with medroxyprogesterone acetate (MPA), the penalty may not be imposed in lieu of, or reduce, any other penalty prescribed under s. 794.011. However, in lieu of treatment with medroxyprogesterone acetate (MPA), the court may order the defendant to undergo physical castration upon written motion by the defendant providing the defendant's intelligent, knowing, and voluntary consent to physical castration as an alternative penalty.
(2)(a) An order of the court sentencing a defendant to medroxyprogesterone acetate (MPA) treatment under subsection (1), shall be contingent upon a determination by a court appointed medical expert, that the defendant is an appropriate candidate for treatment. Such determination is to be made not later than 60 days from the imposition of sentence. Notwithstanding the statutory maximum periods of incarceration as provided in s. 775.082, an order of the court sentencing a defendant to medroxyprogesterone acetate (MPA) treatment shall specify the duration of treatment for a specific term of years, or in the discretion of the court, up to the life of the defendant.
(b) In all cases involving defendants sentenced to a period of incarceration, the administration of treatment with medroxyprogesterone acetate (MPA) shall commence not later than one week prior to the defendant's release from prison or other institution.
(3) The Department of Corrections shall provide the services necessary to administer medroxyprogesterone acetate (MPA) treatment. Nothing contained in this section shall be construed to require the continued administration of medroxyprogesterone acetate (MPA) treatment when it is not medically appropriate.
(4) As used in this section, the term "prior conviction" means a conviction for which sentence was imposed separately prior to the imposition of the sentence for the current offense and which was sentenced separately from any other conviction that is to be counted as a prior conviction under this section.
(5) If a defendant whom the court has sentenced to be treated with medroxyprogesterone acetate (MPA) fails or refuses to:
(a) Appear as required by the Department of Corrections for purposes of administering the medroxyprogesterone acetate (MPA); or
(b) Allow the administration of medroxyprogesterone acetate (MPA),
the defendant is guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[2] Of course, if the state elects to withdraw from the plea agreement and go to trial, the claim is moot.